UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
AISHA NUNEZ and AFROJA KHATUN,

                Plaintiffs,

     - against -

MERCANTILE ADJUSTMENT BUREAU, LLC,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-02962 (PKC) (ST)

PAMELA K. CHEN, United States District Judge:

Plaintiffs Aisha Nunez and Afroja Khatun bring this action against Defendant Mercantile Adjustment Bureau, LLC, alleging violations of the Fair Debt Collection Practices Act (the "FDCPA"). Before the Court is Defendant's motion to dismiss, which the Court grants for the reasons set forth below.

## BACKGROUND

### I. Relevant Facts[1]

On June 7, 2018, Defendant contacted Plaintiffs, each by separate letter (the "Letter(s)"), to collect on debts allegedly owed on accounts with Bank of America, N.A. (Complaint ("Compl."), Dkt. 1, ¶¶ 33–34; Nunez Collection Letter, Dkt. 1-1; Khatun Collection Letter, Dkt. 1-2.) The Letters were the initial communication that each Plaintiff received from Defendant. (Compl., Dkt. 1, ¶¶ 38–39.) The Letters are identical to one another for all materially relevant purposes. (*Id.* ¶ 41.) Each Letter is one page in length. (Dkts. 1-1, 1-2.)

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), the Court must assume as true the allegations in the complaint. *See Littlejohn v. City of New York*, 795 F.3d 297, 306–07 (2d Cir. 2015).

1

The upper-right corner of each Letter includes the name and logo of Defendant with the following contact and address information, formatted as follows:

> Mercantile Adjustment Bureau, LLC [Company Logo]
> 165 Lawrence Bell Drive, Suite 100
> Williamsville, NY 14221-7900
> 1-866-513-9461
> **Please send payment or correspondence to:**
> Mercantile Adjustment Bureau, LLC
> PO Box 9055
> Williamsville NY 14231-9055

(Dkts. 1-1, 1-2.) Immediately underneath this address information is a perforated line, below which each Letter states the amount of each Plaintiff's debt, interest accrued, non-interest charges, and payments made on the debt. (*Id.*) Each Letter next states, "We are available to work with you to help you satisfy the debt in a manner that is fair and equitable to all parties. Our account representatives are ready to assist you. Sincerely, Shawn Martin[,] Phone Number: 1-866-513-9461." (*Id.*) The Letters then state: "Interest and/or fees will not accrue on your account." (*Id.*) Below that statement is the following paragraph—the validation notice:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.*) Underneath the validation notice, the Letters state that "Calls to or from [Defendant] may be monitored or recorded." (*Id.*)

## II. Procedural History

Plaintiffs filed the instant action on May 20, 2019. (Dkt. 1.) On July 8, 2019, Defendant filed a letter requesting a pre-motion conference to discuss its anticipated motion to dismiss

Plaintiffs' Complaint. (Dkt. 9.) On August 14, 2019, the Court held a pre-motion conference and set a briefing schedule for Defendant's motion to dismiss (Aug. 14, 2019 Minute Entry), which was fully briefed on October 28, 2019 (Dkts. 17, 18).

## STANDARD OF REVIEW

### I.   Federal Rule of Civil Procedure 12(b)(1)

The district courts of the United States are "courts of limited jurisdiction" and may not preside over cases absent subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation and citation omitted). "[B]ecause [subject matter jurisdiction] involves a court's power to hear a case, [it] can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). "A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Music Choice v. Claggett*, 385 F. Supp. 3d 245, 248 (S.D.N.Y. 2019) (alteration in original) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). A court deciding a motion to dismiss under Rule 12(b)(1) must accept as true the allegations in the complaint and, in the event of a fact-based jurisdictional challenge under Rule 12(b)(1), may consider extrinsic materials submitted by both parties beyond the allegations in the complaint. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 118, 119 (2d Cir. 2017).

### II.   Federal Rule of Civil Procedure 12(b)(6)

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (internal citation omitted). "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

## DISCUSSION

In moving to dismiss the complaint, Defendant argues that (1) Plaintiff Khatun lacks standing to pursue and/or should be judicially estopped from pursuing her FDCPA claims because she did not properly disclose them in the bankruptcy petition she filed in October 2018 (Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.'s Mot."), Dkt. 17-1, at 6–9); and, regardless, (2) Plaintiffs' FDCPA claims should be dismissed for failure to state a claim, pursuant to Rule 12(b)(6), because the Letters would not confuse a reasonable consumer of their rights and are not materially deceptive (*id.* at 9–15).

### I. Plaintiff Khatun Lacks Standing to Pursue Her FDCPA Claims

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), and "[w]hether a claimant has standing is the threshold question in every federal case, determining the power of the court to entertain the suit," *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 361 (2d Cir. 2003). "If plaintiffs lack [] standing, a court has no subject matter jurisdiction to hear

their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). The plaintiff bears the burden of establishing that she has standing to sue and that subject matter jurisdiction exists as a result. *See Romeo v. FMA All., Ltd.*, No. 15-CV-6524 (ADS) (ARL), 2016 WL 3647868, at *4 (E.D.N.Y. June 30, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Under federal bankruptcy law, a debtor who files a bankruptcy petition must file with the bankruptcy court a financial statement that includes "a schedule of assets and liabilities." 11 U.S.C. § 521(a)(1)(B)(i). "[T]he debtor must disclose in the schedule all 'causes of action owned by the debtor or arising from property of the estate.'" *Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 489 (E.D.N.Y. 2013) (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (per curiam)). A debtor does not have standing to pursue claims that are not disclosed in the schedule. *See Roth v. Solomon & Solomon, P.C.*, No. 17-CV-0868 (JS) (AKT), 2018 WL 718402, at *4 (E.D.N.Y. Feb. 5, 2018) ("Because unscheduled claims remain 'the property of the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy, and the claims must be dismissed.'" (quoting *Lee*, 926 F. Supp. 2d at 489)). Although "[f]ew courts have addressed the level of specificity with which debtors must describe assets [on the schedule] in order to comply with 11 U.S.C. § 521(a)(1)," *Nardino v. Credit Control, LLC*, No. 17-CV-03772 (ADS) (AKT), 2019 WL 2053708, at *4 (E.D.N.Y. Mar. 26, 2019) (second alteration in original) (quoting *Romeo*, 2016 WL 3647868, at *6), "courts typically look at whether the schedule gives the trustee enough information about the claim so he or she can decide if the claim is worth pursuing," *Lee*, 926 F. Supp. 2d at 489 (collecting cases); *accord Romeo*, 2016 WL 3647868, at *6 (noting that a debtor "must do enough itemizing to enable the trustee to determine whether to investigate further").

5

Defendant has provided the schedule filed with Plaintiff Khatun's October 2018 bankruptcy petition, which, according to Defendant, shows the disclosure of only one FDCPA claim,[2] despite the fact that Plaintiff Khatun and her husband, MD Shahin, later filed five FDCPA lawsuits—four in this district, and one in the Southern District of New York.[3] (Def.'s Mot., Dkt. 17-1, at 5.) Plaintiff Khatun argues that, as a debtor need only put "the trustee on inquiry notice" via the claims in a bankruptcy petition schedule, her disclosure was sufficient and should not deprive her of standing to bring her FDCPA claims in this action. (Plaintiffs' Opposition ("Pls.' Opp'n"), Dkt. 18, at 8–9 (quoting *Taylor v. Fin. Recovery Servs., Inc.*, 252 F. Supp. 3d 344 (S.D.N.Y. 2017), *aff'd*, 886 F.3d 212 (2d Cir. 2018)).)

Plaintiff Khatun and her husband filed their bankruptcy petition on October 31, 2018, in the Eastern District of New York Bankruptcy Court, Case No. 2018-BK-46368 (ESS).[4] (Def.'s Ex. A, Dkt. 17-2, at 1–2.) Under the subsection "[c]laims against third parties, whether or not you

---

[2] However, as discussed *infra*, Plaintiff Khatun and her husband's schedule, in fact, specified "FDCPA Claims," suggesting more than one such claim, but did not provide any further detail, such as the number of claims, the total or separate amounts of damages being sought (other than the statutory maximum of $1,000), the facts giving rise to these claims, or where the claims had been or were going to be filed.

[3] In addition to the instant action, Plaintiff and/or her husband filed three cases in the Eastern District of New York: *see* Complaint, *Shahin, et al. v. Northstar Location Servs., LLC* (E.D.N.Y. June 27, 2019) (No. 19-CV-03753 (BMC)) (regarding a July 3, 2018 collection letter); Complaint, *Khatun v. ARS Nat'l Servs., Inc.* (E.D.N.Y. June 11, 2019) (No. 19-CV-03450 (ENV) (PK)) (regarding a July 4, 2018 letter); Complaint, *Shahin v. Client Servs., Inc. & CSI Interco, LLC* (E.D.N.Y. Apr. 9, 2019) (No. 19-CV-02070 (DLI) (PK)) (regarding an April 9, 2018 letter). A fourth case was filed in the Southern District of New York. *See* Complaint, *Shahin v. ARS Nat'l Servs., Inc.* (S.D.N.Y. May 16, 2019) (No. 19-CV-04508 (VB)) (regarding a June 16, 2018 letter).

[4] In resolving a motion to dismiss, a court may take judicial notice of a party's bankruptcy filings, including their contents or representations made therein. *See Roth*, 2018 WL 718402, at *6 ("[T]he court may take judicial notice only to determine what statements the public records contained; the court may not take judicial notice for the truth of the matters asserted." (internal quotation, emphasis, alteration, and citation omitted)).

have filed a lawsuit or made a demand for payment," Plaintiff Khatun and her husband's bankruptcy petition states: "FDCPA Claims against debt collectors from collection letters[,] statutory damages of one thousand dollars per claim & fees" with a "[s]urrender or refund value" of "Unknown." (Def.'s Ex. B, Dkt. 17-3, at ECF[5] 14.) In another section of the bankruptcy petition, Plaintiff Khatun and her husband list these FDCPA claims as exempt within the meaning of Title 11[6] with the "[a]mount of the exemption [] claim" as "$1,000."[7] (*Id.* at ECF 17.) On December 13, 2018, the Bankruptcy Trustee issued the Report of No Distribution, which stated that there was "no property available for distribution from [Plaintiff Khatun and her husband's] estate over and above that exempted by law," and listed exempted assets of $3,400—an amount that included the $1,000 of the scheduled FDCPA claim. (*See* Def.'s Ex. A, Dkt. 17-2; Def.'s Ex. B, Dkt. 17-3, at ECF 16–17.) Plaintiff Khatun and her husband's debts were discharged on February 13, 2019. (Def.'s Ex. A, Dkt. 17-2, at 4.)

The relevant chronology with respect to Defendant's standing argument is as follows: Plaintiff Khatun received Defendant's debt collection letter in June 2018; she and her husband filed their bankruptcy petition in October 2018; Plaintiff Khatun was discharged of her debts in February 2019; and she and Plaintiff Nunez commenced the instant FDCPA action on May 20, 2019. (Compl., Dkt. 1.)[8] Based on the bankruptcy filings and this chronology, the Court concludes

---

[5] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[6] *See* 11 U.S.C. § 522(d)(5) (exempting the "debtor's aggregate interest in any property," subject to certain restrictions).

[7] Of note, FDCPA claims have a statutory damages cap of $1,000. *See* 15 U.S.C. § 1692k(a)(2)(A).

[8] Plaintiff Khatun and/or her husband's four other FDCPA actions were similarly initiated in the months after the discharge of their debt in February 2019. *See supra* note 3.

7

that Plaintiff Khatun lacks standing to pursue this action, having failed to adequately disclose in her bankruptcy petition the FDCPA claims that she now brings.

Plaintiff Khatun relies on *Taylor v. Financial Recovery Services* for the proposition that "debtors' schedules need not identify every potential cause of action, every possible defendant, or even any defendant at all, so long as a partially scheduled claim contains enough information that a reasonable investigation by the trustee would reveal the claim ultimately asserted." *Taylor*, 252 F. Supp. 3d at 350 (internal quotation and citation omitted). In *Taylor*, the plaintiff, who had filed her bankruptcy petition in April 2016 and her FDCPA complaint in June 2016, disclosed in her bankruptcy petition "Possible FDCPA claims" with a value of $1,000, the statutory maximum. *Id.* at 348. The *Taylor* court held that this plaintiff provided the necessary inquiry notice for the bankruptcy trustee where (1) "the disclosure gave notice as to the maximum value of the claim"; (2) the disclosure included "basic notice of the underlying factual scenario"; and (3) "[plaintiff]] had [filed] only a single claim against one defendant, the claim she asserts in this case; thus the trustee would not have to distinguish among multiple claims or multiple defendants." *Id.* at 350. Thus, the *Taylor* court found that a reasonable investigation by the trustee likely would have revealed the FDCPA claim asserted.

By contrast, Plaintiff Khatun and her husband, despite noting the statutory maximum amount of $1,000, described as "Unknown" the maximum value of their "FDCPA Claims against debt collectors from collection letters" (Def.'s Ex. B, Dkt. 17-3, at ECF 14), which, counting all five suits in the Eastern and Southern Districts of New York, amounts to a maximum value of $5,000 in statutory damages. And, unlike the plaintiff in *Taylor*, Plaintiff Khatun and her husband commenced multiple FDCPA suits against six distinct defendants,[9] thereby frustrating a trustee

---

[9] *See supra* note 3.

who would have to "distinguish among multiple claims or multiple defendants." *Taylor*, 252 F. Supp. 3d at 350. This vague and misleading disclosure of scheduled assets plainly runs afoul of bankruptcy regulations. "Simply stated, the Bankruptcy Code does not authorize debtors to selectively divulge their financial interests." *Romeo*, 2016 WL 3647868, at *9; *see also Nardino*, 2019 WL 2053708, at *6 ("A debtor's duty to disclose is therefore comprehensive and necessarily includes legal claims that one might consider speculative."). As a result, courts in this Circuit have routinely found that plaintiffs who omit FDCPA claims from their bankruptcy petitions subsequently lose standing to bring those claims once they emerge from bankruptcy. *See, e.g.*, *Nardino*, 2019 WL 2053708, at *4 (finding that plaintiff lacked standing where she "failed to disclose any of the FDCPA claims commenced in the months following her bankruptcy proceeding—including, and particularly, the instant action—even though all such claims stemmed from prepetition collection letters"); *Romeo*, 2016 WL 3647868, at *10 (finding that plaintiff lacked standing to assert an FDCPA claim where he disclosed one FDCPA claim in his bankruptcy petition but filed multiple FDCPA actions). While Plaintiff Khatun and her husband did not wholly omit any reference to their FDCPA claims, their vague scheduling of an "Unknown" amount of "FDCPA Claims" (Def.'s Ex. B, Dkt. 17-3, at ECF 14), which they estimate elsewhere in the petition as having an exempt value of $1,000 (*id.* at ECF 17), is plainly selective, and thus inadequate, disclosure.

Accordingly, Plaintiff Khatun's FDCPA claims belong to the bankruptcy estate, and she lacks standing to pursue the instant action.[10]  Moreover, even if Plaintiff Khatun had standing to

---

[10] Having reached this conclusion, the Court need not, and does not, consider Defendant's argument that Plaintiff Khatun is judicially estopped from bringing her FDCPA claims. *See Nardino*, 2019 WL 2053708, at *7 ("Because the Court finds that Plaintiff lacks standing to pursue the instant action insofar as it belongs to the bankruptcy estate, the Court need not analyze whether Plaintiff is similarly judicially estopped from bringing the instant action.").

9

bring her FDCPA claim, it would be dismissed pursuant to Rule 12(b)(6) for the reasons discussed *infra*, in connection with the merits of Defendant's motion as to Plaintiff Nunez.

## II.    Violations of Sections 1692g and 1692e of the FDCPA

The FDCPA is "remedial in nature, [so] its terms must be construed in [a] liberal fashion if the underlying Congressional purpose is to be effectuated." *Vincent v. Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) (citations omitted) (quoting *N.C. Freed Co. v. Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973)). To prevail on an FDCPA claim, three requirements must be met:

> (1) the plaintiff must be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, . . . (2) the defendant collecting the debt [must be] considered a "debt collector," and (3) the defendant [must] ha[ve] engaged in [an] act or omission in violation of FDCPA requirements.

*Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 529 (S.D.N.Y. 2013) (internal quotation and citation omitted). Defendant disputes the third element.

Plaintiffs allege that the Letters violate the FDCPA in several ways: (1) the Letters' statement to "please send payment or correspondence to: Defendant" effectively requires that correspondence be mailed, which is contrary to §§ 1692g and 1692e (Compl., Dkt. 1, ¶¶ 42–99); (2) the Letters "bur[y]" the required validation notice within their text, in violation of §§ 1692g(a), 1692e, and 1692e(10) (*id.* ¶¶ 100–65); and (3) the Letters violate §§ 1692g(b), 1692e, and 1692e(10) because they include multiple addresses for Defendant (*id.* ¶¶ 166–277).

Under § 1692g, a collection notice must include certain disclosures about a consumer's right to dispute and obtain validation of a debt in its initial communication to the consumer—the validation notice. *See* 15 U.S.C. § 1692g(a) (listing the required disclosures). Separately, § 1692e prohibits a debt collector from making a "false, deceptive, or misleading representation" in the collection of a debt. 15 U.S.C. § 1692e. The Second Circuit also reads a materiality requirement

10

into this prohibition. *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018). The materiality requirement functions as "a corollary to the well-established proposition that [i]f a statement would not mislead the unsophisticated consumer, it does not violate the [FDCPA]—even if it is false in some technical sense." *Id.* at 85 (brackets in original) (internal quotation and citation omitted).

"In this Circuit, the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)); *see also Taylor*, 886 F.3d at 213–14 (noting that two principles of statutory construction guide courts' assessments of alleged violations of §§ 1692g and 1692e: the FDCPA is liberally construed to effectuate its purpose of consumer protection; and collection notices are analyzed from the perspective of the "least sophisticated consumer" (citation omitted)). "Under this standard, a collection notice can be misleading if it is 'open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (quoting *Clomon*, 988 F.2d at 1319). The least sophisticated consumer test is an objective one that "pays no attention to the circumstances of the particular debtor in question." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012). However, even the least sophisticated consumer is "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Kolbasyuk v. Capital Mgmt. Servs. LP*, 918 F.3d 236, 239 (2d Cir. 2019) (internal quotations and citation omitted).

    A.    **Overshadowing or Contradictory Language in Violation of § 1692g**

"A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer

11

uncertain as to her rights." *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998); *see also Jacobson*, 516 F.3d at 90 (noting that a debt collector "has the obligation[] not just to convey the information, but to convey it clearly"); *DeSantis v. Comput. Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) ("Even if a debt collector conveys the required information, the collector nonetheless violates the [FDCPA] if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty."). Overshadowing only violates the FDCPA if the overshadowing language somehow contradicts the validation rights outlined in § 1692g. *See Savino*, 164 F.3d at 85; *Weber v. Comput. Credit, Inc.*, 259 F.R.D. 33, 39 (E.D.N.Y. 2009) ("Only if the demand for payment obscures the right to dispute the debt within 30 days is an issue of 'overshadowing' raised." (citation and emphasis omitted)). Indeed, contradictory language may comply with the FDCPA if it contains transitional language that alerts the consumer to her validation rights and clarifies that the contradictory language does not affect those rights. *See Savino*, 164 F.3d at 86 (finding that the collection letter's statement violated the FDCPA where the letter lacked "transitional language" explaining that the statement did not override the consumer's § 1692g rights); *cf. Weber*, 259 F.R.D. at 41 (holding that transitional language was not required where a collection letter was not overshadowing).

          1.     **Language to "Send Payment or Correspondence" to Defendant**

Plaintiffs argue that the phrase directing the consumer to "Please send payment or correspondence" to Defendant's Post Office ("P.O.") box address, in effect, "direct[s] [that] all correspondence be mailed," which could lead the least sophisticated consumer to believe that the debt may be disputed only in writing, in violation of the validation requirement of § 1692g(a)(3) and, therefore, is also deceptive under § 1692e. (Compl., Dkt. 1, ¶¶ 52–70, 81–99.) Plaintiffs rely in large part on *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282 (2d Cir. 2013), in

which the Circuit found that a debt collection letter violated the validation notice requirements of § 1692g(a)(3) where it stated that disputes of a debt would be accepted only if made in writing. (Compl., Dkt. 1, ¶¶ 53, 82; Pls.' Opp'n, Dkt. 18, 14–15.)

The Court finds Plaintiffs' interpretation of the Letters implausible. In examining whether the Letters violate the FDCPA, "the court must determine whether the letter, *when read as a whole*, 'would make the least sophisticated consumer uncertain as to her rights.'" *Goodman v. Mercantile Adjustment Bureau, LLC*, No. 18-CV-04488 (ARR) (SJB), 2019 WL 692934, at *4 (E.D.N.Y. Feb. 19, 2019) (emphasis added) (quoting *Jacobson*, 516 F.3d at 90). Here, the language directing a consumer to "send payment or correspondence" to a particular address of Defendant is located in the upper-right corner of each one-page Letter, directly underneath Defendant's phone number. The validation notice is in the middle of each Letter, below text that provides the consumer with the name and phone number of Defendant's account representative. (*See* Dkts. 1-1, 1-2.) The Court finds that the "send payment or correspondence" language neither overshadows nor contradicts the validation notice that appears prominently below it and is also linked to the name and phone number of Defendant's account representative, so as to dispel any misconception that questions or disputes about the account had to be mailed to Defendant.

Moreover, as Defendant notes, at least one court in this district has found identical language in a collection letter also sent by Defendant permissible under §§ 1692g and 1692e of the FDCPA. *See Goodman*, 2019 WL 692934, at *4–7 (finding that plaintiff failed to state a claim against Defendant under §§ 1692g or 1692e because the collection letter's language directing a consumer to "send payment or correspondence" to Defendant's P.O. box did not overshadow or contradict the validation notice or otherwise mislead the least sophisticated consumer). In *Goodman*, the Honorable Allyne R. Ross noted that, as here, the collection letter's language directing a consumer

13

to "send payment or correspondence" was in an "entirely different section of the letter than the validation notice, and the two provisions [we]re separated by a perforated line." *Id.* at *6. Judge Ross added that the validation notice in that letter was adjacent to two references to Defendant's phone number, which would further indicate to the least sophisticated consumer reading the letter "as a whole" that communication need not only be written. *Id.* (quoting *Shapiro v. Dun & Bradstreet Receivable Mgmt. Servs., Inc.*, 59 F. App'x 406, 409 (2d Cir. 2003) (summary order)).

In yet another and even more recent FDCPA action, Judge Ross addressed a similar collection letter that consisted of a detachable portion with instructions to "MAIL ALL CORRESPONDENCE TO: [defendant]" at a P.O. box address. *Rosen v. LJ Ross Assocs., Inc.*, No. 19-CV-5516 (ARR) (VMS), 2020 WL 1332145, at *2 (E.D.N.Y. Mar. 23, 2020). The letter separately included, *inter alia*, "a telephone number with hours." *Id.* As in *Goodman*, Judge Ross concluded that, "reading the letter as a whole, it is clear that the consumer may also contact the defendant by telephone" because the defendant's telephone number was listed twice in the letter, "alerting the consumer to the fact that telephone communication is a possibility." *Id.* at *6.

The Court agrees with Judge Ross's analysis in *Rosen* and *Goodman*, the latter of which examined identical language in a letter also sent by Defendant. With respect to the Letters' instruction to "please send payment or correspondence to [Defendant's P.O. box address], the Court is "persuaded by [D]efendant's argument that this language is merely intended to communicate [D]efendant's preference that physical correspondence be sent to [D]efendant's post office box address, as opposed to its street address." *Goodman*, 2019 WL 692934, at *5. Because this language is not proximate to the validation notice, and because the validation notice is positioned next to the name and telephone contact information of an account representative, "there is nothing in the [L]etter[s] that encourages the consumer to make disputes using one form [of

14

telephone or mail] over the other, or that misconstrues the rights that attach to each form of dispute-making." *Id.* at *6 (citation omitted).

Accordingly, the Court finds that the Letters' direction to "Please send payment or correspondence" to Defendant's P.O. box address does not violate the validation notice requirements of § 1692g and is therefore not misleading or deceptive under § 1692e.

### 2. Formatting of the Validation Notice

Plaintiffs also argue that the Letters "overshadow[] or contradict[] the validation notice" because they "divert[] attention to various delineations of amount owed contained in the top portion of the body of the letter[s] and other rights laid out in pointers in the bottom portion of the [] Letter[s], which distract the consumer's attention away from the validation notice." (Compl., Dkt. 1, ¶¶ 109, 145.) In short, Plaintiffs argue that the Letters' "overall format serves to minimize Plaintiffs' validation rights, notwithstanding the fact that the validation notice is printed on the front of the Letters." (Pls.' Opp'n, Dkt. 18, at 20.) This argument is without merit.

Courts in this Circuit have repeatedly rejected the notion that a validation notice is overshadowed by the formatting of disclosures alone, absent contradictory language. *See, e.g.*, *Musarra v. Balanced Healthcare Receivables, LLC*, No. 19-CV-5814 (ARR) (RML), 2020 WL 1166449, at *7 (E.D.N.Y. Mar. 11, 2020) (rejecting plaintiffs' claim that a collection letter's format overshadowed the validation notice where "[t]he collection letter [did] not misdirect the [least sophisticated consumer] away from his validation notice"); *Park v. Forster & Garbus, LLP*, No. 19-CV-3621 (ARR) (ST), 2019 WL 5895703, at *7 (E.D.N.Y. Nov. 12, 2019) ("Nothing in the collection letter, read as a whole, overshadows or contradicts the validation notice. Nor does the formatting of the letter or inclusion of other 'important notices' on the second page render the letter 'deceptive.'"); *Roman v. RGS Fin., Inc.*, No. 17-CV-04917 (ADS) (AKT), 2019 WL

15

4247551, at *10 (E.D.N.Y. Sept. 6, 2019) (dismissing plaintiff's overshadowing claim where the validation notice was on the back of the collection letter in bold-face type because nothing in the letter contradicted the notice); *McGinty v. Prof'l Claims Bureau, Inc.*, No. 15-CV-4356 (SJF) (ARL), 2016 WL 6069180, at *5 (E.D.N.Y. Oct. 17, 2016) (dismissing plaintiffs' overshadowing claim where the collection letters "[did] not contain language that contradict[ed] or [was] otherwise inconsistent with [p]laintiffs' right to demand validation of their debts").

Here, Plaintiffs do not claim that any language in the Letters contradicts the validation notice; they assert only that the format of the Letters results in overshadowing of the notice where it "buries the required validation notice within its text" (Compl., Dkt. 1, ¶¶ 110, 143) and where the notice, "relative to other language in the [] Letter[s], is visually inconspicuous" (*id.* ¶¶ 113, 146) as a result of being "in the same font size and color as the rest of the body of the Letter" (*id.* ¶¶ 111, 144). Contrary to Plaintiffs' seeming suggestion that a debt collection letter must "otherwise direct the consumer's attention to the required validation notice" (*id.* ¶¶ 116, 149), no such requirement exists in this Circuit. In fact, such a requirement would itself contradict the notion that the least sophisticated consumer is still rational and expected to read the entirety of a collection letter. "The American least sophisticated consumer is neither irrational nor a dolt." *Saraci v. Convergent Outsourcing, Inc.*, No. 18-CV-6505 (BMC), 2019 WL 1062098, at *4 (E.D.N.Y. Mar. 6, 2019) (citation omitted). Here, Defendant has placed the validation notice squarely in the middle of the one-page Letter. The notice is in the same font and styling as the text around it. Even the least sophisticated consumer who reads the letter as a whole, as they must, *see Goodman*, 2019 WL 692934, at *6, would unfailingly read the validation notice.

Accordingly, and especially as they have not asserted that other language in the Letters in some way contradicts the validation notice, Plaintiffs fail to show that the mere placement and

formatting of the validation notice runs afoul of the FDCPA. *See Sturm v. Alpha Recovery Corp.*, No. 19-CV-0556 (SJF) (AYS), 2020 WL 1140425, at *4 (E.D.N.Y. Mar. 6, 2020) ("Plaintiff has cited no case law to support the proposition that, as a matter of law, providing the validation notice prominently within the body of the collection letter fails to adequately inform a debtor of her rights."). Accordingly, the Court finds that the placement of the validation notice in the Letters complies with §§ 1692g and 1692e of the FDCPA.

### B. Multiple Addresses

Plaintiffs further maintain that the Letters violate §§ 1692g and 1692e because the Letters fail to "clearly state the address to which written disputes of the [a]lleged [d]ebts are to be sent." (Pls.' Opp'n, Dkt. 18, at 20; *see also* Compl., Dkt. 1, ¶¶ 183, 239 ("The [] Letter[s] fail[] to instruct the consumer to which of the multiple addresses provided written disputes must be sent.").) The Letters indeed contain two different addresses for Defendant. In both the upper-right corner and very bottom margin of each Letter is Defendant's street address: 165 Lawrence Bell Drive, Suite 100, Williamsville, NY. (Dkts. 1-1, 1-2.) As discussed *supra*, also in the upper-right corner of each Letter and underneath the directive to "Please send payment or correspondence to: [Defendant]" is Defendant's P.O. box address: PO Box 9055, Williamsville, NY. (*Id.*) Even given the inclusion of these two addresses in each Letter, the Court nevertheless finds Plaintiffs' argument insufficient to state a claim.

Courts in this Circuit regularly find that the inclusion in a collection letter of two addresses for the same debt collector—one a street address and the other a P.O. box—would not confuse the least sophisticated consumer. *See Gansburg v. Credit Control, LLC*, No. 18-CV-5054 (FB) (ST), 2020 WL 1862928, at *1 (E.D.N.Y. Feb. 27, 2020) (granting summary judgment dismissal of plaintiff's claim that a collection letter's inclusion of multiple addresses violated §§ 1692g and

17

1692e where "the least sophisticated consumer would know to mail a dispute to the post office box"); *Park*, 2019 WL 5895703, at *6 (noting that "the location and context of the addresses in the instant case make clear that the [least sophisticated consumer] should mail his debt disputes to the P.O. Box address"); *Saraci*, 2019 WL 1062098, at *3–4 (finding that a letter with multiple addresses did not violate the FDCPA where its "only reasonable reading suggests that the least sophisticated consumer would know to mail their disputes to defendant's office" at one address).

Similarly, the least sophisticated consumer would not be confused by the Letters at issue here. The language, "Please send payment or correspondence to: [Defendant's P.O. box address]," is in bold typeface, and only the Defendant's P.O. box address is directly underneath it. (Dkts. 1-1, 1-2.) In contrast, Defendant's street address is included at the very top and along the very bottom of the page, consistent with the header and footer of a document, and the street address is not proximate to any text directing correspondence to Defendant. (*Id.*) Accordingly, having found that the least sophisticated consumer would know to direct written correspondence to Defendant's P.O. box address, the Court concludes that the inclusion of two addresses for Defendant in each Letter does not violate the validation requirements of § 1692g, and the Letters are thus not materially misleading or deceptive within the meaning of § 1692e.

## CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is granted in its entirety. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 13, 2020
      Brooklyn, New York